UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF RHODE ISLAND, by and through the RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT<br><br>Plaintiff,<br><br>v.<br><br>BLACK & DECKER, INC.,<br>EMHART INDUSTRIES, INC.,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: C.A. NO. 18-_____<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

The State of Rhode Island ("State"), by and through its undersigned attorney, and at the request of and on behalf of Janet Coit, in her capacity as Director for the Department of Environmental Management ("RIDEM"), hereby files this complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action against the Defendants, Black & Decker, Inc. and Emhart Industries, Inc. ('Defendants") pursuant to Sections 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9607(a) and 9613(g), the Hazardous Waste Management Act, R.I. Gen. Laws § 23-19.1-1 *et seq.*, the Industrial Property Remediation and Reuse Act ("IPRRA"), R.I. Gen Laws §23-19.14-1 *et seq.*, and the Refuse Disposal Act, R.I. Gen. Laws § 23-18.9-1 *et seq*. The State seeks to recover costs that will be incurred by the State in connection with responses to the release or threatened release of hazardous substances into the environment at or from the Centredale Manor Restoration Project Superfund Site (the "Site"). The Site consists of numbers 2072 and 2074 Smith Street in North

Providence, Rhode Island, as well as surface water, sediment and floodplain areas of the Woonasquatucket River from Route 44 southerly to the Allendale Dam and further below to the Lyman Mill Dam including all contaminated areas within this area as well as any other locations to which contamination from this area has come to be located.  Finally, the State seeks a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), declaring that all the Defendants will be liable for any further response costs that the State may incur as a result of a release or threatened release of hazardous substances into the environment at or from the Site.

2. This Complaint is related to litigation between the United States and Defendants currently before Judge Smith in the Court, Docket No. 11-023S.

3. In Docket No. 11-023S the Court found that Defendants were jointly and severally liable to the United States under Section 107 of CERCLA, 42 U.S.C. § 9607 (Phase I Findings of Facts and Conclusions of Law of September 17, 2015 (ECF No. 405)).

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this action pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1331 and 1345.  This Court has supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the claims arose and the threatened and actual releases of hazardous substances that gave rise to this complaint occurred in this district and because the Site is located in this district.

**PARTIES**

6. The Plaintiff, the Rhode Island Department of Environmental Management,

maintains its principal office at 235 Promenade Street, Providence, Rhode Island 02908. The Director of RIDEM is the Rhode Island official designated to act on behalf of the public to recover all costs incurred by the State, associated with the removal or remedial action resulting from the release and threatened release of hazardous substances pursuant to R.I. Gen. Laws §§ 23-18.9-11, 23-19.1-22, and 42 U.S.C. § 9607(a)(4)(A).

7. Each of the Defendants is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21), and R.I. Gen. Laws §§ 23-19.1-4(10), and 23-18.9-7(9).

8. Defendant Black & Decker Inc. is a Delaware corporation, with its principal place of business in Maryland.

9. Defendant Emhart Industries Inc. was a Connecticut corporation, and has filed a Certificate of Dissolution with the State of Connecticut, and thereafter transferred assets to its sole shareholder, Black & Decker, Inc.

## GENERAL ALLEGATIONS

10. The contamination at the Site resulted from the disposal of waste at a chemical company known as Atlantic Chemical Company or Metro-Atlantic, Inc., and later at a drum reconditioning facility known as New England Container Company, which were located at the Site, adjacent to the Woonasquatucket River.

11. Atlantic Chemical Company, a chemical manufacturer, began operating on a portion of the Site in approximately 1943. Atlantic Chemical Company changed its name in approximately 1953 to Metro-Atlantic, Inc., which then operated on a portion of the Site until the late 1960s. Metro-Atlantic, Inc. consolidated with Crown Chemical Corp. in the late 1960s to form Crown-Metro, Inc. In approximately 1969, USM Corporation acquired all the stock of

Crown-Metro Inc. In approximately 1976, Crown-Metro Inc. changed its name to Bostik South, which merged into USM Corporation in approximately 1978. In approximately 1987, USM Corporation changed its name to Emhart Enterprises Corporation, which subsequently merged into Emhart Industries, Inc.

12. Emhart Industries, Inc. is a successor of certain assets and liabilities of Atlantic Chemical Co., Metro-Atlantic, Inc., Crown-Metro, Inc., USM Corporation, and Emhart Enterprises Corporation. By approximately 1989, Emhart Industries, Inc. became a subsidiary of Emhart Corp. which, in turn, became a subsidiary of Black and Decker Corp. In 2000, Emhart Industries, Inc. approved a plan of reorganization under which, between approximately 2000 and 2002, Emhart Corp. merged into its subsidiary, Emhart Industries, Inc., with Emhart Industries, Inc. remaining as the surviving entity. By 2002, Emhart Industries, Inc. became a subsidiary of Black & Decker, Inc. which, in turn, became a subsidiary of Black and Decker Corp. Emhart Industries, Inc. dissolved in 2002 and distributed assets to its shareholder Black & Decker, Inc. The value of the assets distributed approximated $716 million.

13. Disposal activities at the Site occurred from approximately 1943 to 1972 during which time assorted hazardous substances including, but not limited to, dioxin, polychlorinated biphenyls ("PCBs"), volatile organic compounds ("VOCs"), semi-volatile organic compounds, and metals were disposed of at the Site, resulting in contamination of the soil, groundwater, surface water, and sediments.

14. The Site has been divided into five areas: the Source Area Soil, Groundwater, Allendale Pond and Lyman Mill Pond Sediment, Allendale Floodplain Soil, and Lyman Mill Stream Sediment and Floodplain Soil (including the Oxbow Wetland); all of which contain

hazardous waste deposits.

15. The United States Environmental Protection Agency ("EPA") listed the Site on the National Priorities List ("NPL") in 2000. The NPL was established pursuant to Section 105(a) of CERCLA, 42 U.S.C. § 9605(a), and is found at 40 C.F.R. Part 300, Appendix B. The NPL is a list of those sites at which there are releases of hazardous substances, and which EPA has ranked as having the highest priority for remediation or other response action among all nationally identified releases, based on relative risk or danger to public health, welfare, or the environment.

16. On September 28, 2012, EPA issued a Record of Decision ("ROD") that selected a remedy for the Site. The selected remedy addresses contaminated floodplain soils, sediment, groundwater, and surface water within the Site and follows a comprehensive approach that addresses all current and potential future risks caused by soil, sediment, groundwater and surface water contamination. The remedy includes the Source Area Soil, Groundwater, Allendale Pond and Lyman Mill Pond Sediment, Allendale Floodplain Soil, and Lyman Mill Stream Sediment and Floodplain Soil (including the Oxbow Wetland), and any other areas where contamination from the site operations came to be located.

17. The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

18. At all times relevant to this action, there has been a "release" or "threatened release" of "hazardous substances" into the environment at or from the Site, within the meaning of Sections 101(14), 101(22) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14), 9601(22), and 9607(a).

19. The State has incurred and will continue to incur "response costs," as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), for actions taken in response to the release

or threatened release of hazardous substances at or from the Site.

20. The State's response actions taken at or in connection with the Site were not inconsistent with the National Contingency Plan, which was promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, and is codified at 40 C.F.R. Part 300.

21. As a result of the release or threatened release of hazardous substances at and from the Site, the State will incur future costs for the response action necessary to rectify the effects of said release as defined in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). The State will continue to incur these future costs in connection with the Site.

22. The response actions taken by the State and the resulting response costs incurred by the State in connection with the Site are not inconsistent with the National Contingency Plan, as set forth in 40 C.F.R. Part 300.

## **FIRST CLAIM FOR RELEIF**

23. The State of Rhode Island incorporates by reference, as if fully set forth herein, Paragraphs 1 through 22 of this Complaint.

24. The disposal, releases, or threatened releases of hazardous substances at or from the Site has resulted in the State incurring "response costs" as defined in CERCLA, 42 U.S.C. §§ 9601(25) and 9607(a).

25. The State has incurred response costs to date.

26. The past response costs were incurred in a manner not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

27. The State will continue to incur future response costs at the Site.

28. The Defendants used or manufactured hazardous substances, including but not limited to dioxin, PCB, pesticides, VOCs, semi-volatile organic compounds, and metals, at the Site.

29. The Defendants and/or the companies identified in Paragraphs 8-10, through corporate officers, directors, managers, and employees, participated in and made decisions about the use, handling, storage, and disposal of hazardous substances, including dioxins, at or near the Site.

30. The operations of the Defendants and/or one or more of the companies listed in Paragraphs 8-10 above, resulted in releases and threats of releases of hazardous substances onto soils or into waterways at the Site, including but not limited to dioxin, PCBs, pesticides, VOCs, semi-volatile organic compounds, or metals.

31. The Defendants and/or the companies identified in Paragraphs 8-10 operated at the Site at the time when hazardous substances were disposed of or released at the Site.

32. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the Defendants are jointly and severally liable to the State for all costs incurred by the State to date in connection with the Site.

33. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the State is entitled to a declaratory judgment against the Defendants on liability for response costs to be incurred in the future by the State in connection with the Site that will be binding on any

subsequent action or actions to recover further response costs.

## SECOND CLAIM FOR RELIEF

34. The State of Rhode Island incorporates by reference, as if fully set forth herein, Paragraphs 1 through 33 of this Complaint.

35. There was, within the meaning of R.I. Gen. Laws § 23-18.1-7(12) disposal of solid wastes at the Site.

36. Each Defendant is a "person" within the meaning of R.I. Gen. Laws § 23-18.9-7(9).

37. Each Defendant is liable to the State for civil penalties and costs pursuant to R.I. Gen. Laws § 23-18.9-10.

## THIRD CLAIM FOR RELIEF

38. The State of Rhode Island incorporates by reference, as if fully set forth herein, Paragraphs 1 through 35 of this Complaint.

39. There was, within the meaning of R.I. Gen. Laws § 23-19.1-4, unpermitted disposal of hazardous wastes at the Site.

40. Each Defendant is a "person" within the meaning of R.I. Gen. Laws § 23-19.1-4(10).

41. Each Defendant is liable to the State for costs pursuant to R.I. Gen. Laws § 23-19.1-22 for disposal of hazardous waste at the Site.

## REQUEST FOR RELIEF

WHEREFORE, the State of Rhode Island respectfully requests:

1. That the Court enter judgment in favor of the State and against Defendants, jointly and severally, for all response costs incurred by the State to date relating to the Site, including

enforcement costs and interest on all such costs;

2.      That the Court enter against Defendants and in favor of the State, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), a declaratory judgment on liability for response costs to be incurred in the future by the State in connection with the Site that will be binding on any subsequent action or actions to recover further response costs;

3.      That the State be awarded its costs and disbursements in this action;

4.      That the Court award any additional relief the Court deems just and proper under the circumstances;

                                        Respectfully submitted,

                                        Janet L. Coit,
                                        In her capacity as Director,
                                        RHODE ISLAND DEPARTMENT OF
                                        ENVIRONMENTAL MANAGEMENT,
                                        By her attorney,


                                        /s/ Susan Forcier

                                        Susan Forcier, Esq. (RI #7278)
                                        RIDEM
                                        235 Promenade Street, 4th Floor
                                        Providence, RI 02908
                                        Tel.: (401) 222-6607
                                        Fax: (401) 222-3378
                                        susan.forcier@dem.ri.gov

Dated:                                  June 13, 2018